**Roland GEIGER, a/k/a Rod Geiger,**

v.

**DELL PUBLISHING CO., INC., Eyre Methuen, Ltd., Seymour Lawrence, Inc., d/b/a Delacorte Press/Seymour Lawrence, Anna Keel, Christian Strich, and Isabel Quigley.**

**Civ. A. No. 79–011–Z.**

United States District Court,
D. Massachusetts.

Feb. 11, 1983.

John E. Sutherland, Rosencranz & Sutherland, Boston, Mass., Carroll E. Ayers, Curley, Ayers & Curley, Wakefield, Mass., for plaintiff.

Ira K. Gross, Charles W. Morse, Jr., Sullivan & Worcester, Boston, Mass., for defendant Dell/Seymour Lawrence.

Robert M. Callagy, Satterlee & Stephens, New York City, Eric Lund, Posternack, Blankstein & Lund, Boston, Mass., for defendant Eyre Methuen.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, Roland Geiger ("Geiger"), a Massachusetts resident, brought this action for defamation, pursuant to 28 U.S.C. § 1332, against Dell Publishing Company, Inc. ("Dell"), a New York corporation, Eyre Methuen, Ltd. ("Methuen"), a British corporation, Seymour Lawrence, Inc., d/b/a Delacorte Press ("Delacorte"), a New York corporation, and the editors and translator of a book published by the corporate defendants and Delacorte in Great Britain and the United States. Plaintiff seeks damages for injury to his reputation, lost business opportunities, and mental anguish. A motion to dismiss as to defendant Methuen was allowed on January 16, 1981. The case is before me now on plaintiff's motion to further amend the second amended complaint, and defendants' motion for summary judgment.

The pleadings, affidavits, and exhibits presented to the Court reveal the following undisputed facts. Geiger has been a film producer. While in the United States Army during World War II, stationed in Italy, Geiger met Roberto Rossellini ("Rossellini") and Federico Fellini ("Fellini"). Geiger helped to arrange for the distribution of the film "Open City" in the United States in 1945, soon after it was made. He later returned to Italy where he participated in the production of "Paisa," another early "neo-realist" film by Rossellini. Subsequently, Geiger participated in the production of some two dozen films.

Plaintiff claims that he has been libelled by a passage in a book, *Fellini on Fellini*, published by defendants Dell and Delacorte in 1976 and 1977. The editors of the book are alleged to have been defendants Anna Keel and Christian Strich; Isabel Quigley is alleged to have been the translator. The book is a collection of articles, reminiscences and other memorabilia written by Fellini over many years. The alleged libel occurs in a chapter entitled "Sweet Beginnings" wherein Fellini describes incidents which occurred in Rome at the end of World War II. The offending passages describe Fellini's first meeting with Geiger and Geiger's role in the early development and distribution of post-war Italian films. Geiger is portrayed as a "half-drunk" soldier whose involvement with neo-realism began when he stumbled over one of Rossellini's electric cables. According to Fellini, Geiger claimed to be an American producer but "was a nobody and didn't have a dime."

Earlier in these proceedings I determined that the state law applicable to this case was that of New York. The New York Court of Appeals has held that where a statement alleged to be libelous deals with a matter "arguably within the sphere of legitimate public concern," there is no liability unless the defendant "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapa-*

*deau v. Utica Observer-Dispatch, Inc.,* 38 N.Y.2d 196, 379 N.Y.S.2d 61, 64, 341 N.E.2d 569, 571 (1975).

■ It is evident that *Fellini on Fellini* and "Sweet Beginnings" deal with matters arguably within the sphere of legitimate public concern. The parties' affidavits show that the introduction of Italian neo-realist cinema was a significant event in post-war cultural history. "Open City" had an enormous influence on film-making; moreover, the career of Fellini is itself of interest to the public. Regardless of whether plaintiff is a public or private figure, therefore, in order to establish liability under New York law he must show that defendants were grossly irresponsible.

■ In *Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 435 N.Y.S.2d 556, 416 N.E.2d 557 (1980), the plaintiff sued the editor and publisher of a book which he alleged had defamed him. The book dealt with heroin smuggling, a subject held by the New York Court of Appeals to be "unquestionably a matter 'within the sphere of legitimate public concern,'" 435 N.Y.S.2d at 559, 416 N.E.2d at 560.[1] The material in the book had been published three years earlier by a newspaper. The Court of Appeals affirmed the grant of summary judgment for the editor and publisher, holding that

> a company or concern which simply republishes a work is entitled to place reliance upon the research of the original publisher, absent a showing that the republisher 'had, or should have had, substantial reasons to question the accuracy of the articles or the bona fides of [the] reporter.'

435 N.Y.S.2d at 565, 416 N.E.2d at 566, *citing, Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 383, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1977).[2]

At least the same principle should exist with respect to the translator, because the professional responsibility of a translator is the accuracy of the translation, not the veracity of the original version.

■ The statements by Fellini which are alleged to be defamatory were first published in 1961, in Italian. One year later, the English translation of "Sweet Beginnings" was published by Atlas magazine in New York. The entire collection of articles comprising *Fellini on Fellini* was first published in 1974, in German, by a Swiss publisher. Dell's publication of "Sweet Beginnings" thus marked the fourth time that the allegedly libelous statements appeared in print and occurred fourteen years after the first English publication. The statements were made by an internationally respected director and concerned events about which he had personal knowledge. Under the law of New York, these facts alone would, in the absence of contrary evidence, establish that defendants did not act in a grossly irresponsible manner and would entitle defendants to prevail.

Although plaintiff's complaint alleges that the defendants knew or should have known that Fellini's account of his meetings with Geiger was false and that the defendants acted maliciously and with an intent to injure plaintiff, plaintiff has not produced any evidence in response to defendants' motion for summary judgment which in any way indicates that defendants had or should have had reason to question the authenticity of Fellini's story.

■ Rule 56(e) provides that when a motion for summary judgment is "made and properly supported,"

> an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set

---

1. Other subjects which have been held by New York Courts to be arguably within the sphere of legitimate public concern include the manufacture of Olympic souvenirs, *Zetes v. Richman,* 86 A.D.2d 746, 447 N.Y.S.2d 778, 779 (4th Dep't, 1982), prejudice against homosexuals, *Mazart v. State,* 109 Misc.2d 1092, 441 N.Y.S.2d 600 (Court of Claims, 1981), and the oper-

ation of a kennel, *Campo Lindo for Dogs, Inc. v. New York Post Corp.,* 65 A.D.2d 650, 409 N.Y.S.2d 453 (3d Dep't 1978).

2. The Court of Appeals reversed the decision of the Appellate Division, which had reversed the Supreme Court's grant of summary judgment.

forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment is appropriate.

Where a party moving for summary judgment makes out a *prima facie* case that would entitle him to a directed verdict if no countervailing evidence were adduced at trial, summary judgment should be granted unless the non-moving party produces *some* such evidence. *Walter E. Heller and Company v. O/S Sonny V.*, 595 F.2d 968 (5th Cir.1979); *Stansifer v. Chrysler Motors Corporation*, 487 F.2d 59 (9th Cir.1973); Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2727 at 143. The rationale behind this minimal burden shifting is that upon which summary judgment in general is based—the avoidance of unnecessary trials. Here, since defendants have made out through their affidavits a *prima facie* defense to plaintiff's claim of libel, and since plaintiff has produced no countervailing evidence, defendants' motion for summary judgment is allowed.[3] Judgment may be entered for defendant.

---

**3.** Plaintiff has moved to allow further amendments of his complaint because of defendant Dell's republication of the original alleged defamation in another book, *Ingrid Bergman, My Story,* published in 1980. Plaintiff argues that this republication should be read together with the original publication and that such a reading proves that defendant Dell acted with malice when it published *Fellini on Fellini.* However, Dell's state of mind in 1980 has no relevance to 1976 or 1977, the time of the publication which gave rise to this action.