[938 NE2d 917, 912 NYS2d 484]

RONALD GERACI, Respondent, v THOMAS PROBST, Individually and Doing Business as HENDRICKSON TRUCK CENTER, et al., Appellants.

Argued September 13, 2010; decided October 14, 2010

## POINTS OF COUNSEL

*Rivkin Radler LLP*, Uniondale (*Evan H. Krinick* and *Harris J. Zakarin* of counsel), for appellants. I. Admission into evidence of the Newsday article constituted reversible error warranting a new trial. (*Persky v Bank of Am. N.A.*, 261 NY 212; *Board of Mgrs. of 195 Hudson St. Condominium v 195 Hudson St. Assoc., LLC*, 63 AD3d 523; *Firth v State of New York*, 98 NY2d 365; *Rinaldi v Viking Penguin*, 52 NY2d 422; *Schoepflin v Coffey*, 162 NY 12; *Macy v New York World-Tel. Corp.*, 2 NY2d 416; *Karaduman v Newsday, Inc.*, 51 NY2d 531; *Khan v New York Times Co.*, 269 AD2d 74; *Jee v New York Post Co.*, 176 Misc 2d 253, 260 AD2d 215, 93 NY2d 817; *Hoffman v Landers*, 146 AD2d 744.) II. Supreme Court improperly determined, as a matter of law, that the June 4, 2002 letter was defamatory per se, thereby removing that ultimate determination from the jury. (*Liberman v Gelstein*, 80 NY2d 429.) III. Numerous other evidentiary errors, considered either singularly or cumulatively, constitute reversible error, thereby warranting a new trial. (*Macy v New York World-Tel. Corp.*, 2 NY2d 416; *Hill v Hayes*, 18 AD2d 485, 15 NY2d 986; *Reed v State of New York*, 78 NY2d 1; *Nucci v Proper*, 95 NY2d 597; *People v Romero*, 78 NY2d 355; *Neils v Darmochwal*, 6 AD3d 589; *Mazurek v Home Depot U.S.A.*, 303 AD2d 960; *Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.]*, 5 NY3d 514; *Miceli v State Farm Mut. Auto. Ins. Co.*, 3 NY3d 725; *Brill v City of New York*, 2 NY3d 648.)

*Hopkins & Kopilow*, Garden City (*Michael T. Hopkins, Nicholas F. Miraglia* and *William Geraci* of counsel), for respondent. I. Defendant is liable for article-related damage. (*Garrison v Sun Print. & Publ. Assn.*, 207 NY 1; *Jones v State of New York*, 96 AD3d 105; *Karaduman v Newsday, Inc.*, 51 NY2d 531; *Macy v New York World-Tel. Corp.*, 2 NY2d 416; *Schoepflin v Coffey*, 162 NY 12; *Immuno AG. v Moor-Jankowski*, 77 NY2d 235;

*Armstrong v Simon & Schuster*, 85 NY2d 373; *Firth v State of New York*, 98 NY2d 365; *Hoffman v Landers*, 146 AD2d 744; *Jee v New York Post Co.*, 176 Misc 2d 253.) II. Defendant did not preserve the "republication liability cutoff" argument he has pursued on appeal. (*Karaduman v Newsday, Inc.*, 51 NY2d 531; *Macy v New York World-Tel. Corp.*, 2 NY2d 416; *Schoepflin v Coffey*, 162 NY 12; *Bassell v Elmore*, 48 NY 561; *Bloodgood v Lynch*, 293 NY 308; *People v Kozlowski*, 11 NY3d 223; *Martin v City of Cohoes*, 37 NY2d 162.) III. Defendant's statement "Mr. Geraci shared in that commission" is matter of law defamatory per se. (*Liberman v Gelstein*, 80 NY2d 429; *Garrison v Louisiana*, 379 US 64; *Matovcik v Times Beacon Record Newspapers*, 46 AD2d 636; *Kotowski v Hadley*, 38 AD3d 499; *Gjonlekaj v Sot*, 308 AD2d 471; *Wasserman v Haller*, 216 AD2d 289; *Gatz v Otis Ford*, 262 AD2d 280; *Four Star Stage Light. v Merrick*, 56 AD2d 767; *Moore v Francis*, 121 NY 199; *Crane v New York World Tel. Corp.*, 308 NY 470.) IV. The contemplated curative charge "cured" an "ill" related only to falsity, a fact established as a matter of law, obviating need for a charge. (*Macy v New York World-Tel. Corp.*, 2 NY2d 416.) V. The record includes evidence sufficient to render letter-investigation causation a jury-submissible question of fact. (*Garrison v Sun Print. & Publ. Assn.*, 207 NY 1; *Cohen v Hallmark Cards*, 45 NY2d 493; *Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.*, 46 NY2d 528; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308; *Macy v New York World-Tel. Corp.*, 2 NY2d 416; *Spett v President Monroe Bldg. & Mfg. Corp.*, 19 NY2d 203.) VI. Andrew Buglione's testimony regarding out-of-court statements is—regardless of those statements' truth—relevant proof of damage to plaintiff's reputation, and was used only for this nonhearsay purpose. (*People v Yazum*, 13 NY2d 302; *People v Caviness*, 38 NY2d 227.) VII. The court was within its discretion to allow testimony from a witness disclosed, with no apparent prejudice, 74 days before trial. (*Diamantstein v Friedman*, 199 AD2d 458; *Overeem v Neuhoff*, 254 AD2d 398; *Stark v Semeran*, 244 AD2d 894; *Beck v Albany Med. Ctr. Hosp.*, 191 AD2d 854; *Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.]*, 5 NY3d 514; *Miceli v State Farm Mut. Auto. Ins. Co.*, 3 NY3d 725; *Brill v City of New York*, 2 NY3d 648; *Neils v Darmochwal*, 6 AD3d 589; *Mazurek v Home Depot U.S.A.*, 303 AD2d 960; *Delaney v Philhern Realty Holding Corp.*, 280 NY 461.)

OPINION OF THE COURT

Chief Judge LIPPMAN.

The primary issue presented by this libel action is whether it was error to admit into evidence a republication of defendant Thomas Probst's defamatory statement, made years later without his knowledge or participation. We find that it was error and we therefore modify to vacate the damage award.

Plaintiff Geraci and defendant Probst[1] are former business associates who had been partners in an enterprise engaged in selling fire trucks to fire districts on Long Island. Geraci was also a commissioner of the Syosset Fire District. In March 2002, after the business relationship soured, Geraci sent a letter to the Board of Fire Commissioners stating, among other things, that he "ha[d] not nor [would he] ever profit from any sales related to the Syosset Fire District."

In response, Probst wrote a letter to the Board of Fire Commissioners disputing Geraci's representation. Probst wrote that "[t]o be charitable," plaintiff's statement was "inaccurate." Probst stated that he was including a commission statement from the manufacturer showing that their business had received a commission from the sale of a Syosset rescue vehicle. Probst further represented that "Mr. Geraci shared in that commission." It is undisputed that the accusation that Geraci had received any commission relating to sales of Syosset vehicles was false.

Plaintiff commenced this defamation action in March 2003 to recover for damages incurred as a result of Probst's statement. During the trial, plaintiff sought to introduce into evidence portions of an article that had appeared in Newsday on November 19, 2005—more than 2½ years after plaintiff brought suit and more than three years after Probst wrote his letter. The article, as redacted, stated that the Nassau County District Attorney's office was investigating certain transactions involving the sale of fire apparatus to the Syosset Fire District and that a former business partner had alleged that one of the deals "included a hidden commission for Geraci, even though he had told his fellow commissioners that he'd make nothing from it." The article further stated that "an estranged business partner" had alleged that Geraci had taken a $16,000 commission on one of the truck

---

1. Plaintiff brought suit against Thomas Probst, individually and doing business as Hendrickson Truck Center, Hendrickson Enterprises, Inc., Hendrickson Transport, Inc., and Hendrickson Truck Parts, Inc.

sales and that, although Geraci denied same, a senior official with the truck manufacturer confirmed that the price of the truck included a $16,000 commission. A large color photograph of Geraci also appeared with the article.

When the parties first discussed the issue of whether the article should be admitted, defense counsel noted the long delay between Probst's letter and the Newsday article and argued that Probst had nothing to do with the article—he had not contacted Newsday and was not interviewed for the article— and that it would be inflammatory and prejudicial to his client. The court reserved decision, but indicated that it was "not crazy about some further investigative report down the road apiece." When the parties subsequently revisited the issue, plaintiff's counsel argued that the article was not being offered as a re- publication, but on the issue of damages to show how far the al- legations had circulated. Plaintiff's counsel also argued that, even if it could be considered republication, Probst would still be responsible for it because he should have reasonably anticipated that it would be newsworthy. Defense counsel repeated his earlier arguments and noted that plaintiff could have sued Newsday directly. The court ultimately admitted the article.

The court instructed the jury that Probst's statement was de- famatory per se because it alleged that plaintiff had committed a crime—a violation of the General Municipal Law related to the exercise of his public office—and that the statement was false. The sole question left for the jury on the issue of liability was whether plaintiff had proven by clear and convincing evi- dence that Probst made the statement with actual malice.[2]

The jury found in plaintiff's favor and awarded him $2,950,000 in present and future damages, including $500,000 in punitive damages. Supreme Court granted defendants' motion to set aside the jury verdict, finding it excessive, and granted defend- ants a new trial unless plaintiff consented to a reduced award of $800,000, including $50,000 in punitive damages. Plaintiff consented to the reduced award and both parties appealed.

---

2. The jury answered the following interrogatory in the affirmative: "Did the plaintiff, Ronald Geraci, prove by clear and convincing evidence that when defendant, Thomas Probst, made the state- ment the defendant knew the statement was false? or the de- fendant had serious doubts as to the truth of the statement? or the defendant made the statement with a high degree of aware- ness that the statement was probably false?"

The Appellate Division affirmed the judgment and dismissed plaintiff's cross appeal for lack of aggrievement (61 AD3d 717 [2d Dept 2009]). The Court found defendants' argument that the trial court erred by allowing evidence of the republication of Probst's defamatory statements in the Newsday article unpreserved for review. The Court also rejected defendants' remaining arguments, including the argument that Supreme Court erred by instructing the jury that Probst's statement was defamatory per se. This Court granted defendants leave to appeal (13 NY3d 709 [2009]) and we now modify.

As a threshold matter, we disagree with the Appellate Division that defendants' republication argument is unpreserved for review. As noted above, the parties discussed the issue with the court on more than one occasion and, although defendants did not expressly frame their argument in terms of republication, plaintiff did, and the issue was placed squarely before the court. The arguments were sufficient to alert Supreme Court to the relevant question and sufficiently preserved the legal issue for appellate review.

Our republication liability standard has been consistent for more than one hundred years.[3]

> "It is too well settled to be now questioned that one who utters a slander, or prints and publishes a libel, is not responsible for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control and who thereby make themselves liable to the person injured, and that such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel" (*Schoepflin v Coffey*, 162 NY 12, 17 [1900]).

The rationale behind this rule is that each person who repeats the defamatory statement is responsible for the resulting damages (*see Schoepflin*, 162 NY at 18). The risk of admitting such evidence is that the jury may "charge against defendant a separate, distinct libel (not pleaded in [the] complaint) by someone else, contrary to the rule that '[t]he original publisher of a libel is not responsible for its subsequent publication by others' " (*Macy v New York World-Tel. Corp.*, 2 NY2d 416, 422 [1957]).

---

3. Notably, in a recent case involving the use of electronic media we stated that "[r]epublication . . . occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition' " (*Firth v State of New York*, 98 NY2d 365, 371 [2002] [citation omitted]).

■ Applying this standard, we find that the defendants are not responsible for any harm plaintiff may have suffered from the 2005 Newsday article and that the article should not have been admitted into evidence. Plaintiff failed to demonstrate that Probst had any connection whatsoever with the Newsday article. Notably, the article was published more than three years after Probst wrote the letter to the Board. There is no evidence that Probst contacted anyone at Newsday in order to induce them to print his allegations. Nor is there evidence that anyone at Newsday contacted Probst regarding the story. Finally, there is no indication that Probst had any control over whether or not Newsday published the article. "[A]bsent a showing that [defendant] approved or participated in some other manner in the activities of the third-party republisher" (*Karaduman v Newsday, Inc.*, 51 NY2d 531, 540 [1980]), there is no basis for allowing the jury to consider the article containing the republished statement as a measure of plaintiff's damages attributable to defendants.

Plaintiff asserts that defendants should be liable for the damages caused by the Newsday article because republication was to be reasonably expected. Specifically, plaintiff argues that when allegations of this type of misconduct are made against a public official, it is reasonable as a matter of law to expect that those allegations will be newsworthy and that it would then be a matter for the factfinder as to whether it would be objectively reasonable to expect republication in the media under the facts of a particular case.

It is true that in dicta in *Karaduman* we left open the possibility that three reporters could have been held legally responsible for the republication of their article in book form "had plaintiff been able to demonstrate that they participated in the original publication with knowledge or a reasonable expectation that republication was likely" (51 NY2d at 541 n 2). This standard also appears in the Restatement (*see* Restatement [Second] of Torts § 576 [c] ["The publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if, but only if, . . . the repetition was reasonably to be expected"]).

■ But the Restatement "foreseeability" standard is not nearly as broad as plaintiff or the dissent suggest. Comment *d* explains that a republication may be foreseeable "[i]f the defamation is repeated by a person to whom it is published" if the originator of the statement "had reason to expect that it would

be so repeated." The obvious example is when a person makes a defamatory statement to a newspaper reporter who, in turn, repeats it in a newspaper article—the fact pattern in *Campo v Paar* (18 AD2d 364 [1st Dept 1963]), a case we cited in a footnote in *Karaduman*. The second example in comment *d* occurs when the originator of a statement "widely disseminated the defamation and thus intimated to those who heard it that he [or she] is not unwilling to have it known to a large number of people." Neither of these circumstances is present here: Probst never made any statements to Newsday reporters (and Newsday apparently did not contact him before publishing the story), nor did Probst "widely disseminate" the allegations concerning plaintiff. Thus, even if we were to adopt the Restatement's foreseeability standard, it would not lead us to the conclusion urged by plaintiff.

That we did not endorse such a broad standard of foreseeability in *Karaduman* is evident from our decision the following year in *Rinaldi v Viking Penguin* (52 NY2d 422 [1981]), where we held that the authors of a book published in hardcover form could not be held liable for republication when the book was reissued as a softcover a year later, even though the author's rights in the event of such a republication had been addressed in the original publishing contract. We rested our decision—as we do today—on the fact that the authors "had no knowledge of and played no role in" the republication or its implementation (*see Rinaldi*, 52 NY2d at 435).

Defendants also argue that it was error for the trial court to instruct the jury that Probst's statement was defamatory per se. Whether particular statements are considered defamatory per se is a question of law (*see Golub v Enquirer/Star Group*, 89 NY2d 1074, 1076 [1997]). "Generally, a written statement may be defamatory 'if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community' " (*Golub*, 89 NY2d at 1076, quoting *Mencher v Chesley*, 297 NY 94, 100 [1947]). Damages will likewise be presumed for statements that charge a person with committing a serious crime or that would tend to cause injury to a person's profession or business (*see Liberman v Gelstein*, 80 NY2d 429, 435 [1992]).

Probst's statement alleged that plaintiff committed acts constituting a misdemeanor in violation of the General Municipal Law (*see* General Municipal Law § 801 [1] ["no municipal officer or employee shall have an interest in any contract with

the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to . . . negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder"]; § 805). The statement could likewise be considered an allegation that would damage plaintiff's professional reputation. As such, there was no error in Supreme Court's charge to the jury concerning defamation per se.

Defendants' remaining arguments are without merit.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting the matter to Supreme Court for a new trial as to damages only and, as so modified, affirmed.

Smith, J. (dissenting). Under ordinary principles of tort law, Probst's libel of plaintiff could be found by the jury to be a "legal cause" of the harm plaintiff suffered from the repetition of that libel in the Newsday article. The Restatement says: "The publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if . . . the repetition was reasonably to be expected" (Restatement [Second] of Torts § 576 [c]). We seemed to adopt the Restatement rule in *Karaduman v Newsday, Inc.* (51 NY2d 531, 541 n 2 [1980]), where we strongly implied that the original publishers of a libel could be "found legally responsible for the republication" if they had "participated in the original publication with . . . a reasonable expectation that republication was likely." But today the majority rejects this rule in favor of one followed in two older cases, *Schoepflin v Coffey* (162 NY 12 [1900]) and *Macy v New York World-Tel. Corp.* (2 NY2d 416 [1957]): that one who defames another is not liable for repetition of the defamation without his consent by persons he does not control. The rule the majority adopts was devised for a different world of defamation law, and the justification for it has ceased to exist.

As the majority says, "[t]he rationale behind this rule is that each person who repeats the defamatory statement is responsible for the resulting damages" (majority op at 342, citing *Schoepflin*, 162 NY at 18). When *Schoepflin* and *Macy* were decided, that rationale made sense: then, one whose reputation was damaged by a newspaper story had a reasonable chance of recovering damages from the newspaper, even if the newspaper had innocently repeated an earlier slander or libel. That era ended, at

least for public-official plaintiffs like the one in this case, with *New York Times Co. v Sullivan* (376 US 254, 279-280 [1964]), which held that the First Amendment prohibits a public official from recovering damages for defamation related to his official conduct, unless he proves that the defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." Under *Times v Sullivan*, plaintiff here never had a realistic hope of recovering from Newsday. The damage that plaintiff suffered from the dissemination of a false accusation of corruption to Newsday's readers must either be paid by defendants or go uncompensated.

No post-*Times v Sullivan* case in our Court adopts the *Schoepflin/Macy* rule. *Rinaldi v Viking Penguin* (52 NY2d 422 [1981]), discussed by the majority (majority op at 344), is not an exception. The issue in *Rinaldi* was whether a republication was "sufficient to start the . . . Statute of Limitations running anew" (*id.* at 427). That is not the question we have here. I do not suggest that Newsday's republication of Probst's libel was a new tort that would start a new statute of limitations period; I do suggest that the republication was a reasonably foreseeable consequence of the original tort.

The accusation that Probst made against plaintiff is a serious one; a jury has found, on sufficient evidence, that he made it either knowing it to be false or with serious doubt of its truth; and there was sufficient evidence to support a finding that Newsday's republication of it was reasonably to be expected. I see no good reason why the jury should not have been allowed to award damages based on the republication.

Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH dissents in a separate opinion.

Order modified, without costs, by remitting the case to Supreme Court, Nassau County, for a new trial as to damages only and, as so modified, affirmed.