Desmond, J.
This libel suit against the publisher of a New York City newspaper resulted in a $50,000 verdict for plaintiff and the judgment entered thereon was affirmed by the Appellate Division. We granted leave to appeal. The article complained of appeared in the newspaper on October 18, 1950, shortly after the annual New York Republican State Convention. It stated in substance that, according to several persons, plaintiff had during that convention used a certain letter to further his own senatorial ambitions by demanding that he (plaintiff) be nominated as the party’s candidate for United States Senator and by threatening that if he did not receive that nomination he would make public a certain letter. Plaintiff had been prominent for years in civic affairs and in the affairs of the party, had been at one time the State chairman of the party and at the time of the alleged libel was a member of the United States Congress and a candidate for re-election thereto. The letter was a personal one to plaintiff and described certain transactions which, if they did take place, amounted to a deal or trade for the disposition of certain nominations for public office. The newspaper, in defense, asserted that the' article not only was true but was of innocent meaning and was not libelous per se so that, in the absence of pleading or proof of damages, there was, according to defendant, no issue for the jury.
On the trial defendant failed to prove truth and the jury found falsity. As to whether the publication was libelous per se, the Trial Justice left it to the jury to decide whether the meaning of the article was such ‘ ‘ as would hold the plaintiff out to the *420 scorn and contempt of that reader The jury answered the question in the affirmative and that answer was justified. The conduct charged was that of seeking to obtain office by reprehensible means and the newspaper story was calculated to hold plaintiff up to the contempt of right-thinking people. It was thus defamatory and actionable without proof of special damages (More v. Bennett, 48 N. Y. 472, 476; Mencher v. Chesley, 297 N. Y. 94, 101, 102). This was not a case of comment, severe but not malicious or unfair, about a public figure (see Hall v. Binghamton Press Co., 263 App. Div. 403, affd. 296 N. Y. 714; Hamilton v. Eno, 81 N. Y. 116, 126; Triggs v. Sun Print. & Pub. Assn., 179 N. Y. 144; Bingham v. Gaynor, 203 N. Y. 27, 32, 33; Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95). This article, so the jury found, was a false accusation of wrongdoing and not a mere critical comment which plaintiff’s position in public life required him to tolerate (see Julian v. American Business Consultants, 2 N Y 2d 1, 8, 9; Toomey v. Farley, 2 N Y 2d 71, 85).
Having concluded that the record justified the jury’s findings, we turn to sundry errors of law. First, appellant says that it was prejudicial error for the court to allow plaintiff’s counsel to describe this newspaper article as a charge of ‘ ‘ blackmail and extortion ”. To make that worse, says defendant, the Trial Judge, although he instructed the jurors that the article did not charge the statutory crimes of extortion and blackmail, told them that it was for them to decide whether or not the article described conduct of that general nature. There was no error in any of that. The article, as we read it, did charge plaintiff with committing the crimes defined in sections 751 and 775 of the Penal Law although the charge did not quite include all the elements of the crimes of extortion (Penal Law, § 850) or blackmail (Penal Law, § 856). Thus the Trial Judge was quite correct in telling the jury that while the article did not charge blackmail or extortion as precisely defined in the Penal Law, the jury might say that it was an accusation of conduct quite similar to those crimes and similarly corrupt and blameworthy.
The other alleged errors are as to the admission and exclusion of evidence. Plaintiff was allowed to testify over objection that, following the publication of this article in defendant’s newspaper, he received letters calling him a skunk, that a newspaper cartooned him as a skunk, that a famous country club near Washington cancelled his membership, that members of Con *421 gress, including nationally known leaders, made derogatory remarks about plaintiff as a result of this newspaper article, and, finally, that the action of the United States House of Representatives early in 1951 in refusing to seat plaintiff in the House after a contest over bis election, was to some degree the result of this newspaper article. This allowed plaintiff by his own testimony to put before the jury an impressive collection of incidents wherein plaintiff was snubbed by his friends and associates, expelled from a club and even refused a seat in the United States Congress to which he claimed to be entitled by popular election. Whether such testimony is admissible seems to have been left open by this court in our recent Julian decision (2 N Y 2d 1, supra) as it was left open in Bishop v. New York Times Co. (233 N. Y. 446, 454) where this court said that it was ‘ ‘ inclined to the view ’ ’ that a plaintiff ‘ ‘ may prove if he can that he has been avoided and shunned by former friends and acquaintances as the direct and well-connected result of the libel ”. The Bishop opinion in this court did not decide the question but ordered a reversal on another ground. In the later case of Farrington v. Star Co. (244 N. Y. 585) similar testimony was received and we affirmed, but our records show that our court considered this error to be, on that particular Farrington record, harmless. In the present case this testimony, even if not inadmissible by its nature, was presented in such form and quantity as to violate the rights of defendant. It would be bad enough to allow plaintiff to say that many persons, some named and some unnamed, had shunned him, with no opportunity to defendant to cross-examine any of those people. It was much worse to let this plaintiff say that this newspaper article ‘ ‘ had considerable effect upon the decision of the House in not seating me ”. So wide did such testimony range on this trial that plaintiff was permitted to say that derogatory comments about the activity described by this newspaper came from persons “ pretty well all around the country ” (including so famous a person as the late Senator Taft) and that it was “ pretty hard to identify those except in a general way ”.
Defendant did not object to every single question during this line of testimony but its objections were sufficient to cover the whole of the material accepted as evidence. Some of it was pure hearsay. Plaintiff’s testimony that Congress refused him his seat because of reaction to this newspaper story was the *422 statement of a conclusion not susceptible of proof. There was no proof that any of these things were directly and actually caused by defendant’s article. Furthermore, it amounted to proof of special damages not pleaded (Roberts v. Breckon, 31 App. Div. 431, 436, 437). The rest of plaintiff’s testimony on this subject, except possibly the Chevy Chase Club expulsion, vaguely ascribed plaintiff’s unpopularity as of that time to subjective reactions of individuals to the article. We need not go so far as to hold that a plaintiff can never describe specific examples of ostracism and rejection provided that, in the words of Bishop (233 N. Y. 446, 454, supra), such incidents were shown to be “ the direct and well-connected result of the libel ”. The better practice would be to call as witnesses for plaintiff, subject to cross-examination, the persons who were supposed to have spoken or acted adversely to plaintiff and to demonstrate, if such demonstration be possible, a connection to the libel. But, under any version of the rule of evidence suggested but not prescribed by the Bishop opinion (supra), this testimony went far beyond permissible bounds.
Another definite error committed on this trial was the admission into evidence of proof that a newspaper in Babylon, New York, not published by defendant, had, on the day after defendant’s publication, carried a story telling its readers of the previous day’s article in defendant’s newspaper. Reception of such testimony licensed the jury to charge against defendant a separate, distinct libel (not pleaded in this complaint) by someone else, contrary to the rule that ‘ ‘ The original publisher of a libel is not responsible for its subsequent publication by others ” (Seelman on Law of Libel and Slander in New York, p. 131, par. 149; Raines v. New York Press Co., 92 Hun 515; Collier v. Postum Cereal Co., 150 App. Div. 169, 175; cf. Restatement, Torts, § 578). In defense of this practice plaintiff points out that the court here admitted only so much of the Babylon Leader article as was a reprint or paraphrase of the World-Telegram article, that the Babylon paper had very small circulation compared to the metropolitan daily, and that the testimony amounted to no more than a showing of the widespread publication of defendant’s libel. Those considerations, however, tend rather to minimize the effect of the error than to excuse it. Error it was and taking together this and the error described in the paragraphs just above, we cannot say that they were entirely harm *423 less especially since they had a tendency to arouse the prejudice of the jurors (see Anderson v. Rome, Watertown & Ogdensburgh R. R. Co., 54 N. Y. 334, 341).
We find no error in the exclusion of the Dailey deposition. Defendant was trying to prove that plaintiff, by turning over to the opposing political party the letter described in the first paragraph of this report, had brought about its distribution to the public. That fact, even if established, would not be proof that plaintiff had been guilty of the conduct charged by defendant’s newspaper article. But, actually, the rejected deposition contained no proof at all that plaintiff himself had turned over the letter to the other political party’s officers and there was no proof in the record that the individuals who did turn it over to those rival party officers did so as plaintiff’s agents or at his request, suggestion or direction.
Because of the errors in the receipt of evidence hereinabove described, the judgments should be reversed and a new trial granted, with costs to abide the event.