FASHION BOUTIQUE OF SHORT
HILLS, INC., Plaintiff,

v.

FENDI USA, INC. and Fendi
Stores, Inc., Defendants.

No. 91 Civ. 4544(MGC).

United States District Court,
S.D. New York.

Nov. 19, 1999.

Weil, Gotshal & Manges, LLP by Helene D. Jaffe, Kevin P. Hughes, Robert G. Sugarman, Laura Lehman, Heather Goldstein, New York City, for plaintiff.

Pavia & Harcourt by Steven Skulnik, Richard L. Mattiaccio, Victor Genecin, Paul B. Lyons, New York City, for defendants.

## OPINION

CEDARBAUM, District Judge.

Defendants Fendi USA, Inc. and Fendi Stores, Inc. (together, "Fendi") move *In limine* to preclude the proposed testimony of Dov Frishberg, Ph.D. at the trial of this action. Plaintiff Fashion Boutique of Short Hills, Inc. ("Fashion Boutique") proffers the testimony of Dr. Frishberg as an expert to testify on the lost value of Fashion Boutique's retail business when Fashion Boutique closed that business in 1991. For the reasons discussed below, Fendi's motion is granted.

## BACKGROUND

It is undisputed that plaintiff operated a retail store in a shopping mall in Short Hills, New Jersey from 1983 to 1991. Plaintiff was a Fendi franchisee and offered for sale only merchandise manufactured by Fendi. In late October 1989 defendant Fendi Stores, Inc. opened a retail store in New York City which also sold only Fendi products.

In this diversity case, Fashion Boutique asserted claims under the Lanham Act and common law claims of business slander and disparagement of goods. Fendi's motion for partial summary judgment dis-

missing Fashion Boutique's Lanham Act claims was granted in 1996. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F.Supp. 209 (S.D.N.Y.1996). In 1998, Fendi moved for summary judgment on the remaining common law claims. That motion was granted in part and denied in part, leaving nine actionable statements for the remaining claims of business slander and disparagement of goods. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, No. 91 Civ. 4544, 1998 WL 259942 (S.D.N.Y. May 21, 1998). Those claims are scheduled for trial.

The three statements on which the claim of business slander is based are:

1. In December 1990, a fur salesperson and an assistant manager in Fendi's New York store allegedly told customers Carmen and Madeline Montalbano that the "Fendi organization" was planning to shut down Fashion Boutique "in the near future." (C. Montalbano Decl. ¶ 6; M. Montalbano Decl. ¶ 8.)

2. In March 1991, a customer service representative in Fendi's New York store allegedly told customer Joan Marano that Fashion Boutique would be "closing shortly." (Marano Decl. ¶ 3.)

3. In March 1991, the customer service manager in Fendi's New York store allegedly told customer Lawrence Ray that "we're having problems with the Short Hills store." (Ray Decl. ¶¶ 2–4.)

Plaintiff's claim of disparagement of goods is based on the following six statements:

1. In December 1990, a salesperson in Fendi's New York store allegedly told customer Anna Bassett that Fashion Boutique sold a "franchise line" that was inferior to the "top Fendi line" sold in the New York store. (Bassett Decl. ¶¶ 2–6.)

2. In December 1990, Jack Cohan, a fur salesman in Fendi's New York store, allegedly told the Montalbanos that "[e]verything [Fashion Boutique] sells is inferior. Their furs are old and they're not made well. If you're going to spend that

kind of money, shop here instead. We are the real Fendi." (C. Montalbano Decl. ¶ 4.)

3. In December 1990, a salesperson in Fendi's New York store allegedly told customer Jerry Ring that "[i]f [he] bought [his briefcase] at the Fendi in Short Hills, it is not the real Fendi line." She went on to explain that Fashion Boutique sold an inferior line of goods. (Ring Decl. ¶¶ 3–6.)

4. Near Easter of 1991, a salesperson in Fendi's New York store allegedly told customer Valda Green that Fashion Boutique sold a "lesser line" of Fendi products. (Green Decl. ¶¶ 2–4.)

5. In the spring of 1991, Francesco Gittardi, a salesman in Fendi's New York store, allegedly told customer Philip Scheer that Fashion Boutique sold an inferior line of Fendi merchandise. (Scheer Decl. ¶¶ 2–3.)

6. In June 1991, the customer service manager in Fendi's New York store, Joan Vernocchi, allegedly told customer Carmela Amore "[Fashion Boutique] carried a completely different (and inferior) line of Fendi merchandise than the New York store." (Amore Decl. ¶¶ 2, 4.)

Three of the customers identified above testified that they repeated the statements to others. Green, to whom a statement was made near Easter of 1991, testified that she "was upset about buying something that was not authentic" and "made mention to others ... that [the merchandise] was not good quality." (Green Dep. at 37:11–13, 22–23.) Marano testified that she told her friends, with whom she was shopping when she heard the disparaging remarks in March of 1991, that "the Short Hills store is going out of business." (Marano Dep. at 47:21–22.) Carmen Montalbano testified that he told "co-workers" and "friends" about his December 1990 conversation with the New York Fendi store in which he was allegedly told that Fashion Boutique sold inferior merchandise. (C. Montalbano Dep. at 29:20.)

None of the statements complained about were in writing. Only isolated oral statements have been shown by admissible evidence. Fashion Boutique contends that these statements coupled with other circumstantial evidence, including the decline in its sales between December 1989 and July 1991 when it closed (Def.Mem.Ex. A at 22–23.), are sufficient proof that a campaign of disparagement caused the loss of Fashion Boutique's entire business. But evidence of declining sales is not a substitute for proof of causation in a case in which there is no evidence that statements were widely disseminated by the defendant.

Fashion Boutique has proffered other evidence as circumstantial evidence of causation. It offers the testimony of Caroline Clarke, the former Executive Director of Store Operations for Fendi Stores, Inc., to show that Fendi "wanted to put [Fashion Boutique] out of business." (Pl.Supp. Opp'n at 9.) Clarke testified in her deposition that sometime in 1990 Bruno D'Angelo, the executive vice president of Fendi USA, Inc., instructed her to keep a file on Fashion Boutique "in case the company ever moved to dissolve the ... franchise agreement." (Clarke Dep. at 110:10–14, 130:19–24.) Clarke stated that it was Fendi's policy to encourage Fashion Boutique customers to document their complaints and that complaint letters were collected for the Fashion Boutique file. (Clarke Dep. at 245:14–18, 369:2–4.) Clarke testified that in her opinion "[defendant] Fendi USA was not seeking to resolve the alleged problems with [Fashion Boutique] in a positive constructive manner" by informing "the franchise of the complaint[s]." (Clarke Dep. at 162:3–43, 14–21.) Clarke testified that "the general consensus of all of the management of Fendi Stores at the time" was to "get rid" of Fashion Boutique. (Clarke Dep. at 246:15–17.) These statements, even if admissible, do not show that Fendi widely disseminated defamatory statements or that statements by Fendi caused Fashion Boutique to close.

As evidence that disparaging statements were disseminated widely by Fendi, Fashion Boutique also offers reports of four

private investigators who went separately to the New York store posing as dissatisfied Fashion Boutique customers or Fashion Boutique customers seeking repair for defective merchandise. I have previously ruled that the responses to the investigators' statements are not actionable as defamation or disparagement. *Fashion Boutique,* 1998 WL 259942, at *5. However, Fashion Boutique argues that such statements are "relevant in establishing the extent to which Fendi's statements were disseminated." (Pl.Supp. Opp'n at 10 n. 4.) Oral statements made on four isolated occasions are not evidence of wide dissemination of those statements even when added to the other statements.

In order for evidence of the lost value of Fashion Boutique entire business to be relevant, Fashion Boutique must show that Fendi's isolated defamatory statements caused it to lose its entire business. The circumstantial evidence described combined with evidence of declining sales beginning in December 1989 is not sufficient to support a rational inference that the oral statements made by employees of Fendi's New York store between December 1990, a full year after sales began to decline, and June 1991, two months after Fashion Boutique held a going out of business sale, destroyed Fashion Boutique's business.

### DR. FRISHBERG'S PROPOSED TESTIMONY

Dr. Frishberg is Director of Economic Services at Deloitte & Touche, LLP. Dr. Frishberg's report contains his opinion regarding the value of Fashion Boutique's business. Dr. Frishberg explains that he has "analyzed the impact of certain allegations … regarding actions by the Defendants to destroy the business of Fashion Boutique." (Def.Mem.Ex. A at 1.) He then explains that "[h]aving analyzed these allegations, [he] has proceeded to quantify certain categories of damages to Fashion Boutique." (*Id.*)

Dr. Frishberg assumes, for the purposes of his calculation of damages, that "but for the alleged campaign of disparagement"

Fashion Boutique's growth, from January 1991 on, "would equal the Specialty Retail stores' sector growth rate." (*Id.*) Dr. Frishberg concludes that "$11,421,242 represents … the minimum Plaintiffs are entitled to for economic damages sustained." (Def.Mem.Ex. A at 1.) In accounting for the time value of money through September 1999, Dr. Frishberg's revised report increases this estimate to $15,444,437. (Rev. Report at 10.) This figure also includes Dr. Frishberg's calculation of "lost profits from lost sales that Fashion Boutique suffered from the Defendants' alleged actions during 1989 and 1990." (Def.Mem.Ex. A at 5.) Dr. Frishberg assumes that Fendi's oral statements to four Fashion Boutique customers in December 1990 and to five other customers in the spring of 1991 caused the sharp decline in sales beginning in December 1989.

### DISCUSSION

### I. Dr. Frishberg's Testimony Would Not Assist the Trier of Fact.

■ Federal Rule of Evidence 702 provides that expert testimony may be admitted when it "will assist the trier of fact." Dr. Frishberg's testimony would in any event be limited by his expertise, which is in economics and not in causation. Any opinions regarding causation based on what Dr. Frishberg was told by Fashion Boutique are outside of his expertise. Plaintiff is not proffering Dr. Frishberg as an expert in causation, but rather as an expert on damages. However, Dr. Frishberg's expertise in valuation is only helpful to the trier of fact if it is applicable to the facts of this case. His expertise is not helpful to the extent that it is based upon a causation assumption that plaintiff cannot prove.

The evidence Fashion Boutique proffers to prove that defamatory statements caused its business to fail suffers from a serious flaw. The sharp decline in sales beginning in December 1989 that Fashion Boutique points to pre-dates any of the defamatory statements. While wide dis-

semination by a defendant of defamatory statements followed immediately by a decline in sales may provide some circumstantial evidence that the first caused the second, without that temporal sequence a decline in sales is not circumstantial evidence of causation. Although plaintiff argues that a decline in sales in this case is circumstantial evidence of widespread dissemination by defendant, there is no evidence that the defamation of which plaintiff complains began before Fashion Boutique's sales began to decline sharply. Moreover, there is no evidence that the isolated oral statements to which plaintiff points were disseminated to so many of plaintiff's 8,000 customers that a reasonable inference could be drawn that those statements caused the demise of plaintiff's business.

Dr. Frishberg's testimony is premised on his assumption that the sharp decline in plaintiff's sales beginning in December 1989 was caused by a "campaign of disparagement" by defendants. Without proof of the causation that Dr. Frishberg assumes, his estimate of the value of Fashion Boutique's business is not the measure of damages for the defamatory statements that plaintiff can prove. Thus, since those statements post-date the sharp decline in plaintiff's sales and, in any event, were not disseminated widely enough to provide circumstantial evidence that they totally destroyed plaintiff's business, Dr. Frishberg's testimony is inadmissible. It is based on an irrational assumption and accordingly would not assist the jury in this case.

Plaintiff argues that because Fendi's New York store opened at the end of October 1989, it must have caused the sharp decline in plaintiff's sales in December of 1989. But plaintiff is not suing defendants for opening a New York store which, theoretically, could have caused a decline in plaintiff's sales. Plaintiff is arguing, rather, that the sharp decline in its sales in December 1989 was caused by a campaign of disparagement by defendants before December 1989, and for that plaintiff has no evidence. To the extent that temporal sequence may sometimes provide circumstantial evidence that one event causes an event that follows it shortly in time, the causal event to which plaintiff points is the opening of the store and not disparagement of plaintiff's goods. Dr. Frishberg's testimony would only confuse and distract the jury. Thus, Dr. Frishberg's testimony is precluded under Fed. R.Evid. 403 as well as Fed.R.Evid. 702.

## II. Dr. Frishberg's Testimony Is Not Applicable to Plaintiff's Claim for Disparagement of Goods.

Although the reasoning discussed in Section I is sufficient to exclude Dr. Frishberg's testimony, the parties have raised and briefed the issue of the relevance of his testimony in light of the New York law of special damages. This issue warrants discussion.

■ Under New York law, Fashion Boutique must establish four essential elements to prevail on its claim of disparagement of goods: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages. *See, e.g., Kirby v. Wildenstein,* 784 F.Supp. 1112, 1115 (S.D.N.Y.1992) (applying New York law). The parties' focus is on the fourth element, special damages.

■ The New York courts define special damages "as the loss of something having economic or pecuniary value." *Hogan v. Herald Co.,* 84 A.D.2d 470, 480, 446 N.Y.S.2d 836, 843 (4th Dep't 1982), *aff'd Hogan v. Herald Co.,* 58 N.Y.2d 630, 458 N.Y.S.2d 538, 444 N.E.2d 1002 (1982). *See also* Restatement (Second) of Torts § 575 cmt. b (1977). The loss of customers for which Fashion Boutique seeks to recover falls into this category. *See, e.g., Drug Research Corp. v. Curtis Publ'g Co.,* 7 N.Y.2d 435, 440–41, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960).

■ New York imposes very strict requirements for proof of special damages in the form of lost customers. *Drug Research* sets out the rule: "if the special

damage was a loss of customers, ... the persons who ceased to be customers, or who refused to purchase, must be named." 7 N.Y.2d at 441, 199 N.Y.S.2d 33, 166 N.E.2d 319 (ellipses in original) (citation omitted). This rule is well settled in New York. *See, e.g., Matherson v. Marchello,* 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1000–01 (2d Dep't 1984); *Continental Air Ticketing Agency, Inc. v. Empire Int'l Travel, Inc.,* 51 A.D.2d 104, 108, 380 N.Y.S.2d 369, 372 (2d Dep't 1976); *Kirby,* 784 F.Supp. at 1117.

Judge Goettel has questioned the strict requirement that a plaintiff seeking to recover for lost sales identify the lost customers with particularity. *See Charles Atlas, Ltd. v. Time–Life Books, Inc.,* 570 F.Supp. 150 (S.D.N.Y.1983) (applying New York law). In *Atlas,* the plaintiff brought a claim for product disparagement against the defendant publisher of a book which criticized plaintiff's exercise program. The court held that requiring lost customers to be named would be "grossly unfair" because the plaintiff sold only through mail orders. *Id.* at 156. The court concluded that it would be "virtually impossible to identify those who did not order the plaintiff's product because of the" defendant's widely published statements. *Id.*

The *Atlas* court held that to prove special damages for defamation, a plaintiff is required to specifically identify lost customers only "where it is reasonable to expect him to do so." *Id.* (citations omitted). Fashion Boutique submits that it is "exactly the type of plaintiff that [*Atlas*] protects" because it is "impossible [for Fashion Boutique] to identify all of the customers who did *not* purchase products due to" Fendi's allegedly disparaging remarks to nine of its customers. (Pl. Opp'n at 16.)

■ Plaintiff is seeking to apply this narrow exception to the New York law of special damages without meeting the threshold requirement of the exception, evidence of widespread dissemination of the disparaging statements by defendant. It was not only the nature of the business, but also the extent of the publication of the disparagement that made it impossible for the *Atlas* plaintiff to identify its lost customers. In *Atlas,* the disparaging comments were published by the defendant in a book. The defamation was therefore disseminated to the public at large, and it was not possible to identify all those whom it reached.

The Restatement (Second) of Torts describes the exception articulated in *Atlas* and emphasizes that the exception applies only in a case in which the defendant has disseminated the defamation widely.

> *Widely disseminated* injurious falsehood may, however, cause serious and genuine pecuniary loss by affecting the product of a number of persons whom the plaintiff is unable to identify and so depriving him of a market that he would otherwise have found. *When this can be shown with reasonable certainty* the rule requiring the identification of specific purchasers is relaxed and recovery is permitted for the loss of the market.

Restatement (Second) of Torts § 633 cmt. h (1977) (emphasis added). In this case, the alleged defamatory statements attributable to Fendi were made to nine identifiable customers. It is, therefore, possible for Fashion Boutique to identify those customers who stopped patronizing the store because of Fendi's allegedly disparaging comments.

Additionally, unlike the *Atlas* plaintiff whose business was entirely mail order, Fashion Boutique maintained a customer list with the names and addresses of more than 8,000 customers. (Def.Mot. for Summ.J., March 15, 1996, Skulnik Reply Aff.Ex. NN.) Fashion Boutique has had many years in which to interview lost customers who had made purchases before December 1989 to determine why they stopped shopping at the store. Thus, Fashion Boutique's reliance on *Atlas* is misplaced.

Fashion Boutique cites several cases in support of its argument that it need not identify lost customers in order to meet its

burden of proving special damages. However, like the *Atlas* case, the cited cases were all cases of defamatory statements that were widely disseminated by the defendant. *See Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 258–62 (2d Cir. 1995) (defamation included speeches before industry professional society, letters to relevant professional magazine, letters to independent sales representatives, and letters to city agency with jurisdiction to approve materials for city construction projects); *Wolf Street Supermarkets, Inc. v. McPartland,* 108 A.D.2d 25, 487 N.Y.S.2d 442 (4th Dep't 1985) (defamation was "libelous handbilling" outside of store and court remanded case for a new trial on damages so jury could find portion of lost profits directly attributable to the libel); *Stevenson v. Hearst Consol. Publications, Inc.,* 214 F.2d 902 (2d Cir.1954) (defamatory statements in newspaper); *Bose Corp. v. Consumers Union of U.S., Inc.,* 529 F.Supp. 357, 361 (D.Mass.1981) (defamatory statements in *Consumer Reports* article), *rev. on other grounds,* 692 F.2d 189 (1st Cir.1982). Based on the evidence proffered by plaintiff, the narrow exception to the New York law of special damages articulated in the *Atlas* case does not apply.

Plaintiff's proposed expert testimony values Fashion Boutique's entire business as recoverable damages. The law of New York requires Fashion Boutique to prove special damages which, in this case, requires it to identify the customers who stopped patronizing the store after hearing the alleged defamatory statements. This plaintiff is able to do, and, in fact, has done. Since plaintiff cannot show either that the statements were widely disseminated or that it is unable to identify its lost customers, loss of the market is not the measure of damages under New York law.

### III. Dr. Frishberg's Testimony Is Not Applicable to Plaintiff's Claim for Slander of a Business.

■ Plaintiff's remaining claim is for slander of a business. As discussed in an earlier opinion in this case, *Fashion Bou-*

*tique,* 1998 WL 259942, at *1, when the integrity or credit of a business is directly attacked, slander of a business is slander per se. *See, e.g., Ruder & Finn, Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). Some damages, although they may be nominal, are presumed for slander per se. *Wood v. Lee,* 41 A.D.2d 730, 341 N.Y.S.2d 738 (1st Dep't 1973). This presumption is based on the difficulty of specifically demonstrating particular pecuniary loss "in an action for libel and slander [per se] where the elements of wounded sensibilities and loss of public esteem play a part." *Meehan v. Snow,* 494 F.Supp. 690, 695–96 (S.D.N.Y.1980) (applying New York law) (citations omitted), *rev'd on other grounds,* 652 F.2d 274 (2d Cir.1981).

■ As the *Meehan* court explains, however, "[t]he right to general damages for slander per se does not imply ... a right to substantial compensatory damages." *Id.* at 696. The court denied the plaintiff Meehan the compensatory damages that he sought for loss of business allegedly caused by the slander because he "was unable to be specific as to the nature and extent he had lost business as a result of the slander." *Id. See also Robertson v. McCloskey,* 680 F.Supp. 414, 415–16 (D.D.C.1988) ("The common law only allowed a presumption of harm with respect to general damages, not special damages; with respect to the latter, specific evidence demonstrating the financial harm resulting from the libel is required before compensation for economic harm can be awarded.")

■ Thus, Fashion Boutique must also provide evidence of the economic losses that it contends are attributable to Fendi's allegedly defamatory statements with regard to its claims of slander per se. Plaintiff cannot offer declining sales between December 1989 and December 1990 as evidence that Fendi's allegedly defamatory statements caused Fashion Boutique to close since there is no evidence of any defamatory statement before December 1990. Without proof that defamatory

statements disseminated by Fendi destroyed Fashion Boutique's business, Dr. Frishberg's testimony regarding the lost value of the entire business is irrelevant and therefore inadmissible.

## CONCLUSION

For the foregoing reasons, the motion of Fendi USA, Inc. and Fendi Stores, Inc. is granted. Dr. Frishberg is precluded from estimating the value of Fashion Boutique's entire business as the measure of damages in this case.

SO ORDERED.