**FASHION BOUTIQUE OF SHORT HILLS, INC., Plaintiff–Appellant,**

v.

**FENDI USA, INC., and Fendi Stores, Inc., Defendants–Appellees.**

**Docket No. 00–9094.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 3, 2001.

Decided: Dec. 23, 2002.

Martin E. Karlinsky, Rosenman & Colin LLP (George F. Meierhofer and Gilly Nadel, on the brief), New York, NY, for Plaintiff–Appellant.

Steven Skulnik, Pavia & Harcourt (Richard L. Mattiaccio, Victor Genecin, and Paul B. Lyons, on the brief), New York, NY, for Defendants–Appellees.

Before WALKER, Chief Judge,
NEWMAN and F.I. PARKER, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Plaintiff-appellant Fashion Boutique of Short Hills, Inc. ("Fashion Boutique"), challenges a host of rulings by the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *District Judge*) during this lengthy litigation arising from the demise of its business. Fashion Boutique, formerly a seller of Fendi products, claims that its business was ruined by a campaign of disparagement conducted by a competing boutique, defendant-appellee Fendi Stores, Inc. ("Fendi Stores") and its parent company, defendant-appellee Fendi USA, Inc. ("Fendi USA") (collectively, "Fendi").

Fashion Boutique contends principally that the district court erred as follows: (1) by granting the motion for partial summary judgment in favor of Fendi, dismissing plaintiff's claims under the Lanham Act, *see Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F.Supp. 209 (S.D.N.Y.1996) (*"Fashion Boutique I"*); (2) by excluding plaintiff's expert testimony regarding the value of the lost business, *see Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F.Supp.2d 235 (S.D.N.Y.1999) (*"Fashion Boutique III"*); and (3) by instructing the jury that general damages recoverable under New York law

for slander were limited to the injury to its reputation in the minds of three individual customers.

For the following reasons, we affirm.

## BACKGROUND

### I. *Overview*

Between 1983 and July 1991, Fashion Boutique sold products bearing the internationally-renowned Fendi trademark in an upscale mall in Short Hills, New Jersey. Fashion Boutique was the only freestanding Fendi boutique in the greater New York metropolitan area until Fendi Stores opened on Fifth Avenue in New York City in October 1989. Both Fashion Boutique and Fendi Stores carried only the international line of Fendi products. This "exclusive" line is considered superior in quality to the domestic line sold in American department stores.

Two months after Fendi opened its Fifth Avenue Store, Fashion Boutique experienced a sharp decline in its sales and, by July 1991, Fashion Boutique closed its retail operations. Fashion Boutique alleged in its complaint that the precipitous fall in its sales was caused by a corporate policy carried out by Fendi to misrepresent the quality and authenticity of the products sold at Fashion Boutique.

Fashion Boutique conceded in the district court that it could not show that many of its customers heard disparaging statements first-hand at the Fifth Avenue store. Rather, its theory was and is that Fendi employees made misrepresentations to some customers at the Fifth Avenue store, those customers relayed the comments to others, and the false rumors were thus spread throughout Fashion Boutique's customer base. Prior to the close of its business, Fashion Boutique maintained a mailing list of over 8,000 customers.

Fashion Boutique claims that the actions by Fendi led to the destruction of its retail business, violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a) (1994), which prohibits misrepresentation of another person's goods or services in "commercial advertising or promotion," and violated New York law on product disparagement and slander.

### II. *Motion for Summary Judgment on the Lanham Act Claim*

After the close of discovery, Fendi moved for summary judgment on Fashion Boutique's Lanham Act claim. Following certain pre-trial evidentiary rulings, the district court granted defendants' motion. *See Fashion Boutique I*, 942 F.Supp. at 217.

In challenging the district court's grant of partial summary judgment, Fashion Boutique relies primarily on reported conversations between Fendi personnel and nine undercover investigators hired to pose as shoppers and on declarations by forty Fashion Boutique customers. In *none of the proffered interactions did* employees at the Fifth Avenue store initiate conversations about Fashion Boutique. They commented on Fashion Boutique only after the customers mentioned plaintiff. For example, several customers who reported their conversations with Fendi employees went to the Fifth Avenue store seeking to repair or exchange products or were wearing Fendi products as they shopped at that store. After the customer informed Fendi personnel that the item had been bought at Fashion Boutique, the employee reacted by making critical comments about the quality of Fashion Boutique's merchandise and, on several occasions, refused to exchange or repair the product.

(1) Incidents Prior to the Close of Fashion Boutique

Prior to Fashion Boutique's demise, Fendi personnel told a total of eleven customers that Fashion Boutique carried an inferior, "department store" line of products or that Fashion Boutique sold "fake" or "bogus" merchandise. During four visits to Fendi's Fifth Avenue store, undercover investigators were told that Fashion Boutique's merchandise was of inferior quality. Five shoppers and several undercover investigators related incidents in which Fendi employees described Fashion Boutique's goods as a "different line" from that sold at the Fifth Avenue store. In addition, Fendi employees made critical comments about the customer service at Fashion Boutique to six investigators and one customer.

Sixteen Fashion Boutique customers reported having "heard rumors" that Fashion Boutique sold fake Fendi merchandise "[d]uring the period 1990–1991." One shopper heard similar rumors but could not remember when she heard them.

(2) Statements Made After the Close of Fashion Boutique

Eight customers identified statements made after Fashion Boutique's demise in July 1991. Fendi employees told four of them that Fashion Boutique sold a "different line" of products, three others that Fashion Boutique sold inferior or fake Fendi goods, and one other that Fashion Boutique closed because it caused trouble or was too costly to maintain. In addition, a Fendi employee told one investigator that the owners of Fashion Boutique were filing for bankruptcy.

(3) Caroline Clarke Deposition

As evidence of the alleged policy of disparagement, plaintiff presented the deposition of Caroline Clarke, a former employee of Fendi USA. Although Clarke's superiors never explicitly told her of a policy to disparage Fashion Boutique, she learned from speaking to managers and salespersons at Fendi Stores that salespersons followed a practice of disparaging the customer service at Fashion Boutique.

(4) The District Court's Decisions

After carefully reviewing the evidence, Judge Cedarbaum determined that most of the evidence submitted by Fashion Boutique failed to support the Lanham Act claim. Specifically, the district court found that (1) the statements suggesting that Fashion Boutique sold a "different" line were not disparaging because "different" does not impugn the quality of the product; (2) the declarations by customers alleging to have "heard rumors" that Fashion Boutique sold fake items was inadmissable hearsay and thus could not be considered on a motion for summary judgment; and (3) disparaging remarks made after Fashion Boutique closed were not actionable under the Lanham Act and, because plaintiff and defendants were no longer competitors, were not relevant. *See id.* at 215.

Judge Cedarbaum concluded that the remaining evidence was insufficient to withstand a motion for summary judgment because it did not fall within the meaning of "commercial advertising or promotion" as set forth in the Lanham Act. The district court held that the Lanham Act is violated when the defendants proactively pursue customer contacts and disparage the plaintiff's goods or services. *See id.* at 215–16 (listing cases). Because each disparaging comment was made only after the customer initiated a discussion about Fashion Boutique, the district court concluded that the communications were reactive and not proactive. *See id.* at 216.

Moreover, relying on the four-part test announced in *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1535–36 (S.D.N.Y.1994) (*"Gordon & Breach I"*), the district court held that to constitute "commercial advertising or promotion" the statements must be sufficiently disseminated to the relevant purchasing public. *See Fashion Boutique I*, 942 F.Supp. at 216. The district court concluded that plaintiff had failed to prove sufficient dissemination because it presented only a dozen admissible comments within a purchasing public universe consisting of thousands of customers.

### III. *Partial Summary Judgment on Common–Law Claims*

After the dismissal of its Lanham Act claims, Fendi moved pursuant to New York law for summary judgment on plaintiff's claims for disparagement of goods and business slander. After granting defendants' motion for summary judgment on a number of claims, decisions that Fashion Boutique has not appealed, the district court allowed three claims of business slander and six claims of disparagement of goods to proceed to trial. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, No. 91 Civ. 4544, 1998 WL 259942, at *7 (S.D.N.Y. May 21, 1998) (*"Fashion Boutique II"*). The district court later reinstated one of the dismissed claims.

### IV. *Exclusion of Fashion Boutique's Expert Witness*

Prior to trial, Fashion Boutique proffered the expert testimony of Dr. Dov Frischberg that the estimated value of Fashion Boutique's lost business was in excess of $15 million. The district court granted defendants' motion in limine to exclude the testimony on the basis that there was insufficient evidence to support

a reasonable inference that Fendi's actions caused plaintiff to go out of business. *See Fashion Boutique III*, 75 F.Supp.2d at 238–39. The district court also determined that Dr. Frischberg's testimony was not relevant to the product disparagement claims because it failed to comply with New York law's strict proof of damage requirement. *See id.* at 239–41.

### V. *Jury Verdict*

Ultimately, the jury was presented with two claims of slander per se, two claims of slander per quod, and four claims of disparagement of goods. The jury returned a verdict in favor of Fashion Boutique on these claims, awarding Fashion Boutique $35,000 in lost sales from five customers, $5 for damage to its reputation, and $75,000 in punitive damages.

On appeal, Fashion Boutique challenges principally the district court's grant of summary judgment on its Lanham Act claim, exclusion of its expert testimony, and the jury instructions with respect to general damages on its slander claims.

### DISCUSSION

### I. *Section 43(a) of the Lanham Act*

Fashion Boutique contends that the district court abused its discretion when it decided the summary judgment motion by not considering the rumor evidence, "different line" statements, and comments made after the close of the store. Fashion Boutique also argues that the district court erred in finding that Fendi's actions did not constitute "commercial advertising or promotion" under the Lanham Act. Specifically, Fashion Boutique maintains that its proof of several disparaging comments by defendants, together with evidence of rumors that plaintiff sold fake or inferior merchandise, falls into the category "commercial advertising or promotion."

## A. Standard of Review

We review the district court's grant of summary judgment de novo. *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 90 (2d Cir.2002). Summary judgment is appropriate where the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. "Commercial Advertising or Promotion"

Section 43(a) of the Lanham Act provides that

> [a]ny person who ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). An important issue in this case is whether the allegedly disparaging statements by salespersons at the Fendi Fifth Avenue store constituted "commercial advertising or promotion" within the meaning of Section 43(a).

The statute does not define the phrase "commercial advertising or promotion."[1] In determining whether representations qualify as "commercial advertising or promotion," most courts have adopted the four-part test set forth in *Gordon & Breach I.* Under the test, in order to qualify as "commercial advertising or promotion," the contested representations must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services"; and, (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public. *See Gordon & Breach I,* 859 F.Supp. at 1535–36; *see also Proctor & Gamble Co. v. Haugen,* 222 F.3d 1262, 1273–74 (10th Cir.2000) (adopting four-part test); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir.1999) (same); *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1384 (5th Cir.1996) (same); *see also Porous Media Corp. v. Pall Corp.,* 173 F.3d 1109, 1121 (8th Cir.1999) (although defining advertising as communication that "propose[s] a commercial transaction," analyzing whether dissemination was sufficient to satisfy fourth element of *Gordon & Breach* test).

In deciding whether to adopt this four-part test, we adhere to the ordinary rules of statutory construction and look first to the plain and ordinary meaning of statutory terms. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 236 (2d Cir.1974) ("[A]lthough the [Lanham] Act was intended to enlarge the category of activity proscribed by federal law ... [it] does not have boundless application ... but is limited to false advertising as that term is generally understood."). Applying those rules to the terms "commercial advertising or promotion," we easily accept the first and third elements of the *Gordon & Breach* test that define the term "commercial" as

---

1. The legislative history is equally unavailing. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins.,* 173 F.3d 725, 734 (9th Cir.1999); *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1383 (5th Cir.1996).

referring to "commercial speech" that is made for the purpose of influencing the purchasing decisions of the consuming public. *See Gordon & Breach I,* 859 F.Supp. at 1536.

The precise meaning of "advertising or promotion" has been subject to various interpretations. *Compare Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 905 F.Supp. 169, 182 (S.D.N.Y. 1995) (holding that "*any* promotional statement directed at actual or potential purchasers falls within the reach" of the Lanham Act), *and Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.,* 880 F.Supp. 1005, 1020–21 (S.D.N.Y.1994) (holding that single letter addressed to one purchaser constitutes "advertising or promotion"); *with Garland Co. v. Ecology Roof Sys., Corp.,* 895 F.Supp. 274, 279 (D.Kan.1995) (rejecting *Mobius* and holding that the Lanham Act is violated only where the misrepresentations are widely disseminated within the relevant purchasing public), *and Med. Graphics Corp. v. SensorMedics Corp.,* 872 F.Supp. 643, 650–51 (D.Minn.1994). The statute's disjunctive wording compels us to give meanings to both "advertising" and "promotion" that do not render either term superfluous. *See Connecticut ex rel Blumenthal v. United States Dep't of the Interior,* 228 F.3d 82, 88 (2d Cir.2000). We conclude that the distinction between advertising and promotion lies in the form of the representation. Although advertising is generally understood to consist of widespread communication through print or broadcast media, "promotion" may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers. *See, e.g., Seven–Up,* 86 F.3d at 1386 (finding sales presentation to a significant percentage of industry customers constitutes advertising under the Lanham Act).

The Seventh Circuit has recently limited the scope of the Lanham Act to advertising defined as "a form of promotion to anonymous recipients, as distinguished from face-to-face communication .... [and] a subset of persuasion [that relies on] dissemination of prefabricated promotional material." *See First Health Group Corp. v. BCE Emergis Corp.,* 269 F.3d 800, 803 (7th Cir.2001) (internal quotations omitted). The problem with the Seventh Circuit's focus on the term "advertising" is that it fails to define the term "promotion" in any meaningful way.

Although the Lanham Act encompasses more than the traditional advertising campaign, the language of the Act cannot be stretched so broadly as to encompass all commercial speech. *See, e.g., Sports Unlimited, Inc. v. Lankford Enters., Inc.,* 275 F.3d 996, 1005 (10th Cir.2002); *First Health Group,* 269 F.3d at 803. The ordinary understanding of both "advertising" and "promotion" connotes activity designed to disseminate information to the public. *Cf. Garland,* 895 F.Supp. at 276. Thus, the touchstone of whether a defendant's actions may be considered "commercial advertising or promotion" under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action. *See, e.g., id.* at 279; *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.,* 820 F.Supp. 1072, 1078 n. 2 (N.D.Ill. 1993).

In determining whether a defendant's misrepresentations are designed to reach the public, we find the district court's

proactive-reactive distinction instructive, but not necessarily dispositive. Although most reactive statements will doubtless consist of off-the-cuff comments that do not violate the Lanham Act because no broad dissemination is intended or effected, we leave open the possibility that a cause of action might exist where a defendant maintains a well-enforced policy to disparage its competitor each time it is mentioned by a customer, if such a policy of reactive disparagement successfully reaches a substantial number of the competitor's potential customers.

In sum, we adopt the first, third and fourth elements of the *Gordon & Breach* test. To decide this appeal, we need not decide whether the second element—that defendant and plaintiff be competitors. We note that the requirement is not set forth in the text of Section 43(a) and express no view on its soundness.

## C. Fashion Boutique's Lanham Act Claim

Based on the foregoing principles, we easily conclude that Fashion Boutique failed to put forward sufficient evidence that defendants' actions constituted "commercial advertising or promotion" under the Lanham Act.

Turning first to plaintiff's evidentiary claims, we believe that the district court did not abuse its discretion in excluding the evidence of rumors. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 746 (2d Cir.1998) (stating that evidentiary rulings, even those made at the summary judgment stage, are reviewed for "manifest error"). Regardless of whether the rumor evidence was properly rejected as hearsay, the district court later decided, in any event, that its

prejudicial effect outweighed its minimal probative value. We find no "manifest error" in this decision given the absence of proof connecting defendants to the rumors.

There is no evidence to suggest that the remaining statements were part of an organized campaign to penetrate the marketplace. Even including the "different line" statements, post-closing statements, and comments made to undercover investigators, Fashion Boutique has presented a total of twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers. Such evidence is insufficient to satisfy the requirement that representations be disseminated widely in order to constitute "commercial advertising or promotion" under the Lanham Act. *See Sports Unlimited,* 275 F.3d at 1004–05 (finding evidence of dissemination of information to two customers, where plaintiff made up to 150 bids per year, insufficient to constitute "commercial advertising or promotion"); *cf. Coastal Abstract,* 173 F.3d at 735 (upholding jury's verdict on Lanham Act where misrepresentation was made to one of three potential clients); *Seven–Up,* 86 F.3d at 1386 (finding evidence of dissemination sufficient where statements were made to eleven out of seventy-four potential customers). The Clark deposition was specifically limited to disparagement of the customer service at Fashion Boutique, as distinct from the products sold there,[2] and there is nothing to suggest that the comments were anything more than individual reactions to particular customers' mention of Fashion Boutique.

## II. *Damages for State Law Claims*

Fashion Boutique contends that the district court improperly limited the amount

---

**2.** During the course of the litigation, Fashion Boutique dropped its claims based on dispar-

agement of its customer service and has not pressed those claims on appeal.

of damages it could recover on its New York law claims for slander and product disparagement. Plaintiff asserts that it should be able to recover for the loss of its entire business and that the district court's exclusion of its expert testimony, which valued the loss of the business in excess of $15 million, was an abuse of discretion. In addition, Fashion Boutique argues that the district court improperly instructed the jury regarding general damages for its slander claims.

### A. Background Principles of New York Law

 Under New York law, slander and disparagement of goods constitute distinct causes of action. To recover for disparagement of goods, the plaintiff must show that the defendant published an oral, defamatory statement directed at the quality of a business's goods and must prove that the statements caused special damages. *See Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 670–71, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981); *Hogan v. Herald Co.,* 84 A.D.2d 470, 446 N.Y.S.2d 836, 843 (N.Y.App.Div.1982); *see also El Meson Español v. NYM Corp.,* 521 F.2d 737, 740 (2d Cir.1975) (interpreting New York law). Where loss of customers constitutes the alleged special damages, the individuals "who ceased to be customers, or who refused to purchase, must be named" and the exact damages itemized. *Drug Research Corp. v. Curtis Publ'g Co.,* 7 N.Y.2d 435, 441–42, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960).

 In contrast to disparagement of goods, slander claims do not require specific itemization of damages. Where the statement constitutes slander per se, general damages to the reputation of the business are presumed. *See Liberman v. Gelstein,* 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992). Actual dam-ages, however, must be proven. *See Orlowski v. Koroleski,* 234 A.D.2d 436, 651 N.Y.S.2d 137 (N.Y.App.Div.1996) (limiting damages for slander per se to nominal amount because actual damages were not proven). The amount of general damages "must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." *Wolf Street Supermkts. v. McPartland,* 108 A.D.2d 25, 487 N.Y.S.2d 442, 448 (N.Y.App.Div.1985) (quotations and citations omitted). Under New York law, false statements attacking the integrity or credit of a business constitute slander per se. *See Ruder & Finn,* 52 N.Y.2d at 670, 439 N.Y.S.2d 858, 422 N.E.2d 518.

 Finally, a plaintiff may not recover damages from the original author for either product disparagement or slander arising from the republication of defamatory statements by a third party absent a showing that the original author was responsible for or ratified the republication. *See Macy v. New York World–Telegram Corp.,* 2 N.Y.2d 416, 422–23, 161 N.Y.S.2d 55, 141 N.E.2d 566 (1957). Evidence of such republication is not admissible at trial, even to prove widespread dissemination of the defamatory statements. *See id.* at 422, 161 N.Y.S.2d 55, 141 N.E.2d 566.

### B. Expert Testimony

Fashion Boutique asserts that it may recover for any losses causally connected to disparagement of goods or slander. Thus, according to plaintiff, the expert's testimony, estimating the value of that business in excess of $15 million, should have been admitted at trial because it was relevant to the jury's calculation of damages.

 We review the district court's decision to admit or exclude expert testi-

mony for an abuse of discretion. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). A decision to exclude expert testimony is not an abuse of discretion unless it is "manifestly erroneous." *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1042 (2d Cir.1995). The district court's "gatekeeping" function in evaluating expert testimony requires that it look to Federal Rule of Evidence 401 to determine whether the testimony is relevant; *i.e.,* whether it " 'ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Campbell ex rel Campbell v. Metro. Prop. & Cas. Ins. Co.,* 239 F.3d 179, 184 (2d Cir.2001) (quoting Fed.R.Evid. 401).

■ As the district court recognized, plaintiff's expert Dr. Frischberg was not qualified to make an assessment of the cause of the demise of the business. His expertise was limited to calculating the value of the business. In making his calculations, he assumed that a "campaign of disparagement" caused Fashion Boutique's sales to decline. However, as discussed above, no evidence of such a policy existed. *See Fashion Boutique III,* 75 F.Supp.2d at 237–38. Moreover, Fashion Boutique presented only one customer who heard defamatory statements directly from Fendi salespersons during the first year of the sales decline. The other twenty or so incidents that occurred later can hardly be blamed as the cause of the falling sales. To permit Fashion Boutique to present evidence of the value of the entire business in the absence of evidence of widespread dissemination would invite the jury to award damages based on speculation. *See Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir.1987). Therefore, we agree with the district court that

Dr. Frischberg's testimony assumed a causal connection that plaintiff failed to prove.

■ Fashion Boutique argues that the district court improperly disregarded the "rumor" evidence as proof of causation. However, under New York law, Fashion Boutique may not recover for damages resulting from republication through rumors, and thus such evidence was properly excluded. To the extent that Fashion Boutique argues that the rumors were evidence of initial publication, it has presented insufficient evidence linking the rumors to the defendants. Moreover, any argument on appeal that there was sufficient initial publication by Fendi personnel to cause the demise of the business is undercut by Fashion Boutique's concession below that initial publication was limited and that the gravamen of its injury was from representations spread via republication by other customers.

■ Moreover, in order to be relevant to a claim for product disparagement, the expert's testimony must be probative on the amount of damages plaintiff is allowed to recover. The expert's generalized findings about the value of the business make no attempt to itemize damages for named customers as required by New York law. Fashion Boutique ignores the New York requirement of itemized damages in its briefs and instead rests solely on *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256 (2d Cir.1995). In *Securitron,* we upheld a finding of damages for defamation based on an estimate of lost profits rather than an itemized list. *See id.* at 265. *Securitron* reviewed and upheld a jury award based on defamation aimed at the business integrity of the plaintiff, *i.e.,* slander per se for which special damages need not be itemized, not product disparagement. *See id.* at 262; *see also Ruder & Finn,* 52 N.Y.2d at 670, 439 N.Y.S.2d

858, 422 N.E.2d 518 (distinguishing between proof requirements for damages arising out of product disparagement and defamation under New York law). Hence, Fashion Boutique's reliance on *Securitron* is misplaced.

### C. General Damages

Fashion Boutique's remaining claim is that the district court impermissibly restricted general damages for slander or slander per se to the "plaintiff's business reputation in the mind of the person to whom the [slanderous] statement you are considering was made." This instruction limited general damages to the injury to Fashion Boutique's business reputation in the minds of three individual customers. Fashion Boutique contends that the instruction was erroneous and that the proper standard would have permitted the jury to award greater general damages based on evidence of widespread circulation of the statements.

At oral argument, counsel for Fashion Boutique conceded that it failed to object to the jury instructions on the general damages. Under Rule 51 of the Federal Rules of Civil Procedure, a party in a civil action must make specific objections to jury instructions before the jury retires to deliberate. *See* Fed.R.Civ.P. 51; *see also Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56–57 (2d Cir.2002). The failure to so object results in waiver, in which case this court may review the instruction for "fundamental error" only. *See Jarvis*, 283 F.3d at 62. Fundamental error is a more exacting standard than the "plain error" standard in the criminal context and must be "so serious and flagrant that it goes to the very integrity of the trial." *Shade v. Hous. Auth. of New Haven*, 251 F.3d 307, 312 (2d Cir.2001). We find no error, much less fundamental error, in the jury instruction on general damages.

Although general damages are normally based on the extent of circulation of the defamation, the damages in this case were necessarily limited by New York's prohibition on recovery for injury due to republication of defamatory statements by third parties. *See Macy*, 2 N.Y.2d at 422–23, 161 N.Y.S.2d 55, 141 N.E.2d 566. Fashion Boutique concedes that it may not recover for republication of the statements, but claims that a jury could infer widespread circulation by Fendi based on the few allegedly slanderous statements it proved and the subsequent and sharp decline in its sales.

Our review of New York cases has not revealed any precedents that specifically address the apparent tension between the republication rule and a jury's general prerogative to consider the extent of circulation in evaluating damages. However, it is well-established that damages must be based on the extent of circulation based on initial publication and evidence of the circulation of the slander in republished form is inadmissible at trial. *See id.* at 422, 161 N.Y.S.2d 55, 141 N.E.2d 566. In every case relied on by plaintiff, the extent of circulation of the initial publication was known and the jury could reasonably infer the amount of general damages arising from that level of circulation.

Each slanderous statement relied on by Fashion Boutique was made only to an individual customer shopping at Fendi's Fifth Avenue store. Any further damage resulting from the particular comment could be attributed only to nonactionable republication by the customer, not Fendi. Therefore, as to each of these statements, the damages were properly limited to any harm resulting from the initial publication to the individual customer. Fashion Boutique urges this court to permit the jury to infer that other such comments were made on a wide scale basis. The only evidence

that Fendi ever impugned the integrity of plaintiff's business, however, was limited to isolated instances over the course of years.[3] Fashion Boutique simply asserts that a jury could infer other instances of slander given the existence of "a larger injury ... that was difficult to prove," but fails to present any competent evidence that would permit the jury to reasonably infer that other slanderous statements were made directly by Fendi or the amount of damages arising from them.

Without a showing of the degree of circulation of slanderous statements made directly by Fendi, or at least some method of distinguishing between losses due to republication and initial publication, the jury would be left to speculate about the damages attributable to Fendi and those arising from the actions of others. Thus, the jury instruction properly restricted the jurors' consideration of the harm caused by statements made by defendants. *See Coastal Abstract Serv.*, 173 F.3d at 732–33, 736 (remanding state defamation case for new damages trial because damages could have been based on statements found nonactionable as a matter of law); *Wolf Street Supermkts.*, 487 N.Y.S.2d at 449 (holding that jury should have been instructed that lost profits be apportioned according to the damage "proximately linked to the libel," not to other non-actionable acts by defendant); *cf. Macy*, 2 N.Y.2d at 422–23, 161 N.Y.S.2d 55, 141 N.E.2d 566 (remanding for new trial based in part on prejudice arising from admission of evidence of republication by third party). We agree with the district court that the jury could not be left to presume widespread dissemination from proof of isolated incidents without running afoul of New York's republication rule.

We have carefully considered appellant's remaining arguments and find them to lack merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

3. Fashion Boutique does not direct this court to any instances other than those presented in its opposition to the motion for summary judgment on the Lanham Act claim. In those papers, Fashion Boutique provided evidence of the three statements presented to the jury; three statements, suggesting that Fashion Boutique sold fake Fendi goods that were nonactionable because they were made after the close; and one statement regarding plaintiff's credit that was nonactionable because it was made to an undercover investigator. *See*

*Fashion Boutique II*, 1998 WL 259942, at **2–5. The remaining evidence Fashion Boutique claims should have been admitted (*i.e.*, "different line" and the majority of the post-closing statements) as evidence of circulation constitute product disparagement and cannot now be argued to support a finding of general damages for slander. The district court found that general damages were limited to claims of slander, not product disparagement, and Fashion Boutique has not challenged this ruling on appeal.